# In the United States Court of Federal Claims

No. 22-1766C
(Filed: January 3, 2024)
**FOR PUBLICATION**

```
*************************************
JOSUE ALVAREZ, et al.,            *
                                  *
                 Plaintiffs,      *
                                  *
v.                                *
                                  *
THE UNITED STATES,                *
                                  *
                 Defendant.       *
                                  *
*************************************
```

*John W. Stewart*, McGillivary Steele Elkin LLP, Washington, D.C., for Plaintiffs. With him on briefs were *Gregory K. McGillivary* and *Patrick Miller-Bartley*, McGillivary Steele Elkin LLP, Washington, D.C.

*Yariv S. Pierce*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

Plaintiffs — current and former employees of the Customs & Border Protection Agency ("CBP") — seek overtime pay under the Fair Labor Standards Act ("FLSA") and the Customs Officer Pay Reform Act ("COPRA"). Am. Compl. (ECF 2); *see* 29 U.S.C. § 207; 19 U.S.C. § 267. The government moved to dismiss the COPRA claims under RCFC 12(b)(6), and any time-barred COPRA and FLSA claims under RCFC 12(b)(1).[1]

The parties agree that any FLSA claims that are more than three years old and any COPRA claims that are more than six years old are time-barred. However, the government has failed to establish that Plaintiffs' COPRA claims should be

---

[1] Mot. to Dismiss (ECF 8). Plaintiffs responded to the motion ("Pls.' Resp.") (ECF 9), and the government replied ("Def.'s Reply") (ECF 12).

dismissed. The motion to dismiss is therefore **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The Amended Complaint alleges the following relevant facts. Plaintiffs are or have been customs officers assigned to CBP's "Special Response Team." Am. Compl. ¶ 3. The Special Response Team is a specialized group of officers that deploys to address "particularly complex or dangerous situations" around the country. *Id.* ¶ 7. Sometimes Special Response Team officers are required to travel for overnight assignments or training. *Id.* ¶ 10. Plaintiffs allege that they are entitled to overtime compensation for that travel but have not been paid. *Id.* ¶¶ 13–14.

## DISCUSSION

The United States Court of Federal Claims has jurisdiction under the Tucker Act to adjudicate "any claim against the United States founded … upon … any Act of Congress or any regulation of an executive department … in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Because the Tucker Act is "a jurisdictional statute [that] does not create any substantive right enforceable against the United States for money damages," *United States v. Testan*, 424 U.S. 392, 398 (1976) (citing *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605–07 (1967)), parties asserting Tucker Act jurisdiction must "identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). That requires a "money-mandating" source of law, *i.e.*, a statute or regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained … and is reasonably amenable to the reading that it mandates a right of recovery in damages." *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (quotes and citations omitted) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983), and *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003)).

Plaintiffs' claims for unpaid overtime and liquidated damages arise under FLSA and COPRA. FLSA is a money-mandating source of law, *see Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014), as is COPRA. *See* 19 U.S.C. § 267(a)(1), (a)(2)(B)(i) (stating that customs officers "*shall* be compensated" and are "*entitled* to be paid" for certain activity) (emphasis added); *ARRA Energy Co. I v. United States*, 97 Fed. Cl. 12, 19 (2011) ("[A] statute will be deemed to be a money-mandating source of law if it compels the government to make a payment to an identified party or group.").

"[T]he special statute of limitations governing the Court of Federal Claims requires" that timeliness be considered a jurisdictional question as well. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132 (2008). FLSA claims must be brought within two years of alleged violations, or within three years if the violations were willful. 29 U.S.C. § 255(a); *see* Am. Compl. ¶ 14 (alleging willfulness). COPRA does not have its own statute of limitations, *see* 19 U.S.C. § 267, so COPRA claims are subject to a six-year catchall limitations period. 25 U.S.C. § 2501. Plaintiffs allege that the government has failed to pay them "since October 19, 2016, and continuing and ongoing," Am. Compl. ¶ 17, so Plaintiffs have pleaded claims within the statutes of limitations.

Defendant argues that FLSA and COPRA claims falling outside those respective statutes of limitations should be dismissed for lack of jurisdiction. Mot. to Dismiss at 10–12. Plaintiffs do not disagree that this Court lacks jurisdiction over time-barred claims. Pls.' Resp. at 15–16. To the extent that any time-barred claims were included in the Amended Complaint, they are therefore dismissed for lack of jurisdiction.

The main dispute between the parties is whether Plaintiffs have stated a claim under COPRA. The government argues that COPRA's overtime provisions do not allow compensation for travel time. Tr. at 5–6; Mot. to Dismiss at 4–6. I conclude that the government has not supported its argument sufficiently for me to grant the motion.

The relevant provisions of COPRA are set out below. Briefly, COPRA mandates overtime for hours of "work" over specified weekly and daily thresholds. It also compensates officers for "callback" work, *i.e.*, circumstances when customs officers are required to return to their place of work after completing a regularly scheduled assignment:

(a) Overtime pay

(1) In general

Subject to paragraph (2) and subsection (c), a customs officer who is officially assigned to perform work in excess of 40 hours in the administrative workweek of the officer or in excess of 8 hours in a day shall be compensated for that work at an hourly rate of pay that is equal to 2 times the hourly rate of the basic pay of the officer. For purposes of this paragraph, the hourly rate of basic pay for a customs officer does not include any premium pay provided for under subsection (b).

(2) Special provisions relating to overtime work on callback basis

(A) Minimum duration

Any work for which compensation is authorized under paragraph (1) and for which the customs officer is required to return to the officer's place of work shall be treated as being not less than 2 hours in duration; but only if such work begins at least 1 hour after the end of any previous regularly scheduled work assignment and ends at least 1 hour before the beginning of the following regularly scheduled work assignment.

(B) Compensation for commuting time

(i) In general

Except as provided in clause (ii), in addition to the compensation authorized under paragraph (1) for work to which subparagraph (A) applies, the customs officer is entitled to be paid, as compensation for commuting time, an amount equal to 3 times the hourly rate of basic pay of the officer.

19 U.S.C. § 267.

The government's argument mainly hinges on the language authorizing compensation for callback commuting "in addition to" compensation for "work." 19 U.S.C. § 267(a)(2)(B)(i). According to the government, the fact that callback commuting is distinct from work means that — under the "canon of consistent usage" — Congress did not intend for travel time to constitute "work" under COPRA. *See* Mot. to Dismiss at 5–8.

That makes little sense. To begin with, the government says that COPRA does not actually pay for an officer's *time* commuting to callback work, but a flat fee of three times the officer's basic pay. Tr. at 21–23; 19 U.S.C. § 267(a)(2)(B)(i). The statute thus treats a measure of non-time compensation as "in addition to" time-based compensation for "work." But so what? Plaintiffs are not seeking compensation for callback commuting, but for time spent on other kinds of travel. It is perfectly natural that a flat fee for callback commuting would be "in addition to" compensation for time spent on "work," regardless of what "work" means or whether it includes other kinds of travel. Put another way, the statute's provision of non–time-based measures of compensation for a given activity sheds no light on how to classify other activities that *are* measured in time.

The same is true even assuming that COPRA's callback commuting provision distinguishes a particular form of travel from "work." COPRA singles out a particular form of travel and compensates it in a special way, different from how it compensates "work." 19 U.S.C. § 267(a)(2)(B)(i); *see also* 19 C.F.R. § 24.16(b)(5), (13) (COPRA

- 4 -

implementing regulations). That says nothing, though, about whether other forms of travel are work. In the FLSA context, the Portal-to-Portal Act excludes commuting and similar travel from compensation entirely, *see* 29 U.S.C. § 254(a), but other travel is still compensable as work. *See* 5 C.F.R. § 551.422; 29 C.F.R. § 785.33 *et seq.*; *see also* 5 U.S.C. § 5542(b)(2). Plaintiffs' travel thus could be "work" under COPRA even if callback commuting is not.

As should be clear by now, what matters is not COPRA's provision for callback commuting, but the meaning of the statutory term "work." There are many sources and interpretive methods the government might have deployed to answer that question. But the government failed to address it in the briefing. The government did argue at length that COPRA's definition of "work" might be different from FLSA's. *See* Def.'s Reply at 7–12. Even if that is right, though, resolving the interpretive dispute in the government's favor requires substantive development of COPRA's meaning — not merely negating an analogy to FLSA.

At argument, the parties discussed the Supreme Court's definition of "work" in *Tennessee Coal Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944), *see* Tr. at 31–34, 53–54, 58–59, and the government pointed to conditions on treating travel as "work" under other statutes, *see* Tr. at 14–15. The government also argued that because work typically involves exertion, and because COPRA assumes that "work" is something officers "perform," "work" must involve more action than simply moving from place to place. *Id.* at 32–34, 40–42. Whatever the merits of those theories, the parties have not developed them sufficiently to rely on them for decision. *See ABS Glob., Inc. v. Cytonome/ST, LLC*, 984 F.3d 1017, 1027 (Fed. Cir. 2021); *Raytheon Co. v. United States*, 96 Fed. Cl. 548, 555 n.2 (2011).

The parties did spend a substantial part of their briefing on their competing interpretations of COPRA's legislative history. The parties agree, though, that except for occasionally distinguishing work from callback commuting — which is unilluminating for the reasons just explained — the legislative history is essentially silent on the specific issue of whether travel time can count as work. Mot. to Dismiss at 7–9; Pls.' Resp. at 8–10.

The parties therefore focus on what they take to be Congress's purposes. The government claims that "[t]he purpose of COPRA was to increase efficiency and to limit opportunities for abuse in the Customs overtime system," and that allowing compensation for travel "would encourage Customs employees not to travel during their duty hours and to avoid working while traveling." Mot. to Dismiss at 8–9. Plaintiffs respond that COPRA was intended "to bring custom officers' compensation scheme more closely in line with existing overtime rules for federal employees" while

- 5 -

accommodating officers' "need to be available for special assignments under unpredictable circumstances and to be compensated even when appearing for an assignment that results in no additional work." Pls.' Resp. at 9.

The net result is a good illustration of why courts have generally stopped using legislative history in the way the parties propose. Leaving aside debates about how legislative history is made and what it means,[2] courts now widely acknowledge Congress makes laws by balancing competing goals. "No legislation pursues its purposes at all costs[.]" *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 637 (2012) (quoting *Rodriguez v. United States,* 480 U.S. 522, 525–26 (1987) *(per curiam)*). The text that results from the legislative process does not carry out any of those goals to the furthest extent, but only in balance with different goals and other constraints. *Rodriguez*, 480 U.S. at 526; *see also* Frank H. Easterbrook, *Statutes' Domains*, 50 U. Chi. L. Rev. 533, 541 (1983) ("Legislators seeking only to further the public interest may conclude that the provision of public rules should reach so far and no farther[.]"). Identifying Congress's purpose thus says very little about whether a particular statutory term carries out that purpose in a particular way. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017). Even if one or both of the parties has accurately described the purposes that animated COPRA, that is no basis to decide the dispute here.

At bottom, the term "work" in COPRA must mean *something*. The government may even be right that it does not include travel time, or travel time like that described in the Amended Complaint. But the burden for a RCFC 12(b)(6) motion is on the moving party. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021); *Cohen v. Bd. of Trustees of the Univ. of the D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016); *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012); *see also* Wright & Miller, *Federal Practice and Procedure: Civil* 3d § 1357 ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists."); 2 *Moore's Federal Practice*, § 12.34 (Matthew Bender 3d ed.) ("The party moving for dismissal has the burden of showing that no claim has been stated.").[3] Because the government has not yet explained why COPRA precludes compensation for the time at issue, Plaintiffs' COPRA claims cannot be dismissed at

---

[2] *Compare, e.g.*, Robert A. Katzmann, *Judging Statutes* 38 (2014) (referring to committee reports as "authoritative" legislative history that should inform courts' interpretation of statutes); *with* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2122–24 (2016); *and* John F. Manning, *Why Does Congress Vote on Some Texts but Not Others?*, 51 Tulsa L. Rev. 559, 565–70 (2016).
[3] "The precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims." *Haddock v. United States*, 161 Fed. Cl. 6, 17 n.8 (2022) (quoting *Kraft, Inc. v. United States*, 85 F.3d 602, 605 n.6 (Fed. Cir. 1996)).

this stage. The parties may of course revisit the legal viability of Plaintiffs' COPRA claims in future proceedings in this case.

**<u>CONCLUSION</u>**

For the foregoing reasons, the motion to dismiss is **GRANTED** as to FLSA claims dating back more than three years and COPRA claims dating back more than six years. The motion is otherwise **DENIED**.

**IT IS SO ORDERED.**

<u>s/ Stephen S. Schwartz</u>
STEPHEN S. SCHWARTZ
Judge